

Nancy V. Alquist
NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:                                                          *

NADER MODANLO,                           *        Case No. 05-26549-NVA
                                                                       (Chapter 11)
       Debtor.                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OF DECISION IN SUPPORT OF ORDER DENYING DEBTOR'S MOTION [108] TO STAY (PENDING APPEAL) APPOINTMENT OF TRUSTEE

On November 23, 2005, Michael H. Ahan, filed a Motion [60] to Appoint Trustee, or, in the Alternative to Convert Case to Chapter 7 (the "Motion"). The Court held evidentiary hearings on this matter on December 20, 2005 and December 21, 2005. On December 23, 2005, the Court issued its oral ruling [the transcript is found in the record at [81]] , and entered its Order [70] granting Mr. Ahan's Motion by appointing a Chapter 11 Trustee. On January 4, 2006, the Debtor filed his Notice of Appeal [84] to the United States District Court. On January 10, 2006, this Court entered an Order [91] designating Christopher B. Mead as Chapter 11 Trustee (the "Trustee"), following his identification by the United States Trustee. That same day, the Trustee filed in this Court a voluntary petition under chapter 11 of the Bankruptcy Code on behalf of a company controlled by the Debtor called New York Satellite Industries, LLC

("NYSI") (Case No. 06-10158). [1]

On February 7, 2006, over a month after filing his Notice of Appeal, and nearly a month after entry of an Order appointing the Trustee, the Debtor filed the instant Motion [108] to Stay [Pending Appeal] Appointment of Trustee and Memorandum of Points and Authorities in Support of Motion to Stay Appointment of Trustee (the "Motion to Stay").  On February 14, 2006, the United States Trustee filed its Opposition [114] to Motion to Stay Appointment of Trustee Pending Appeal (the "U.S. Trustee Opposition to Stay Motion").  On February 17, 2006, Michael Ahan filed his Opposition [120] to Motion to Stay Pending Appeal.  On February 22, 2006, the Court conducted a hearing with respect to the Motion to Stay.

In support of the Motion to Stay, the Debtor focuses much of his attention on the portion of this Court's ruling that addressed conflicts of interest and potential conflicts of interest posed by the Debtor's position as sole member of NYSI and as member of the board of a related company, Final Analysis Communications Services, Inc. ("FACS").  The Debtor argues that by replacing him, the Trustee has stepped into the same conflicts that led to this Court's appointment of the Trustee in the first place: "[a]ll that the Court has accomplished is that it has substituted the Trustee's business judgment for that of the Debtor."  *See* Debtor's Memorandum in Support of Motion to Stay, p. 4.  The Debtor oversimplifies the issues, neglects to consider the full spectrum of the Court's reasons for the appointment, and partially misconstrues the Court's ruling.  The Debtor fails to address the fact that this Court's decision to appoint an independent third party over the estate was based on a number of factors that came to light at the hearing

---

[1]   An Order Granting [121] Motion for Joint Administration of cases 05-26549 (lead case) and 06-10158 was entered on February 17, 2006.

including, most significantly, the Debtor's mismanagement of his affairs, incompetence and apparent lack of candor during his stewardship of the chapter 11 case. In short, the substitution of another party's business judgment for that of the Debtors is precisely what the Court intended to accomplish. The following passages from the transcript [81] of this Court's oral ruling address aspects of the decision pertaining to the Debtor's conduct that the Debtor ignores in its Motion to Stay:

> Nader Modanlo is the debtor in the instant Chapter 11 case which has been pending in this court since Mr. Modanlo filed a voluntary petition on July 22, 2005. Mr. Modanlo owns 100 percent of the stock of New York Satellite Industries LLC which has been referred to in this case sometimes as NYSI or New York Satellite. Mr. Modanlo is also a board member of New York Satellite.
>
> New York Satellite in turn owns a majority interest in Final Analysis Telecommunications Services, Inc. This has sometimes been called in this case FACS, the acronym FACS, F-A-C-S. Mr. Modanlo is a board member of FACS.
>
> FACS is a beneficiary of a jury verdict against General Dynamics in the amount of approximately $129 million. The jury verdict was issued on September 6, 2005 and the Court does not have before it the case number but it was entered in the United States District Court for the District of Maryland.
>
> Given this verdict and its potential value, it appears that the largest asset of Mr. Modanlo's estate is his stock ownership in New York Satellite due in turn to its majority ownership of the stock of FACS. Mr. Modanlo played the principal role in guiding FACS through the General Dynamics litigation. In the view of the litigation counsel who represented FACS in the case and who testified before this Court in the instant matter, Mr. Modanlo was the soul of the litigation.

*See* Transcript, Dec. 23, 2005, pp. 5-7, beginning at line 20.

> The most compelling reason convincing this Court that a trustee is appropriate in this case is a fact that was not known or initially pled by the movant in this case. It is a fact that seems to have come to light for the first time at the hearing on this matter. Mr. Modanlo testified that after the petition date of July 22, 2005 and after the date of the 341 meeting in this case, and in fact sometime in October or November of 2005, New York Satellite's major asset, and perhaps its only asset, its stock in FACS, was transferred to an entity called Prospect Telecom.

>Prospect Telecom initiated a replevin action against New York Satellite in October of 2005 in the District Court of Maryland for Montgomery County, case number 06-02-21650-05.  Mr. Modanlo took no steps to have New York Satellite defend this action in any way.  An order was entered in that case in November of 2005 directing Mr. Modanlo to turn the stock [held by] New York Satellite over to Prospect Telecom within 48 hours.
>
>Furthermore, Mr. Modanlo testified that he had heard from different lawyers for Prospect Telecom starting in June of 2005 with respect to the alleged loan default by New York Satellite . . . and Prospect Telecom's demand for the turnover of stock as a result.  Although Mr. Modanlo testified that he refused to turn over the stock to Prospect Telecom's lawyers, it is notable that at least some of these demands occurred before the debtor's 341 meetings and that the debtor made no mention of this critical issue to anyone in this case.
>
>The relinquishment of this stock, ostensibly Mr. Modanlo's estate's largest asset's [sic] , was alienated in a replevin action without defense apparently within the last two months.

*Id.*, pp. 12-13, beginning at line 11.

>A chapter 11 trustee needs to investigate.  Mr. Modanlo, by his actions, has demonstrated that he has not [done this] or cannot do this.  He [per]mitted a major asset to leave the estate without investigation of remedies or serious consultation with counsel, and Mr. Modanlo told no one involved in this case about the creditor demands or the replevin action, including the  U.S. Trustee.
>
>In this Court's view, his actions with respect to this suit and this asset constitute mismanagement and incompetence.  His actions in this regard were certainly not in furtherance of the interests of his creditors and this estate.

*Id.*, p. 14, beginning at line 9.

### The Standard for Appointment of a Trustee

The appointment of a trustee in a chapter 11 case is governed by Section 1104 of the Bankruptcy Code, which provides, in pertinent part, as follows:

>**§ 1104.  Appointment of trustee or examiner.**
>
>(a)  At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest of the United States trustee, and after

>notice and hearing, the court shall order the appointment of a trustee -
>
>(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
>(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor . . .

11 U.S.C. §1104 (a)(1)-(2).

"Cause" is ascertained on a case-by-case basis. The determination is within the court's discretion.

>Section 1104(a) provides that the court "shall" order the appointment of a trustee upon a finding of cause, suggesting that the court's discretion is circumscribed. Thus, the court must order the appointment of a trustee once it finds that "cause" exists. (footnote omitted)
>
>However, the court retains considerable discretion to determine when evidence of fraud, dishonesty, incompetence, mismanagement or other factors are sufficiently serious to constitute "cause" requiring the appointment of a trustee and the extent to which any such allegations involve current (as opposed to former) management.

ROGERS ET. AL., COLLIERS ON BANKRUPTCY, 1104.03 [3][b] vol. 7 (14th ed.)

### The Standard for Granting a Stay Pending Appeal

Rule 8005 of the Federal Rules of Bankruptcy Procedure provides that a motion for a stay of a bankruptcy court's order must ordinarily be presented first to the bankruptcy judge, and the bankruptcy judge may suspend proceedings or issue any other order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. Fed. R. Bankr. Proc. 8005. A party seeking stay pending appeal carries a substantial burden. *In re Adelphia Comms. Corp.,* 333 B.R. 649, 659 (Bankr. S.D.N.Y. 2005). The party seeking a stay pending appeal must

show: (1) that he will likely prevail on the merits of the appeal; (2) that he will suffer irreparable injury if the stay is denied; (3) that other parties will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay. *Culver v. Boozer*, 285 B.R. 163, 166 (Bankr. D. Md. 2002) (citing *Long v. Robinson*, 432 F. 2d 977, 979 (4th Cir. 1970)); *see also Adelphia*, 333 B.R. at 659 (cited by Debtor). All four requirements must be satisfied to some extent before a stay will be granted. *Adelphia*, 333 B.R. at 659.

### *Likelihood of Success on the Merits of the Appeal*

The Debtor argues that he will succeed on the merits of his appeal because (1) the appointment of a trustee did not cure the underlying problem, *i.e.*, conflicting fiduciary duties; (2) other parties (in state court proceedings) already have established that Mr. Ahan's allegations that the Debtor engaged in bribery, theft, forgery and dishonesty were false; (3) the Debtor exercised sound business judgment in failing to protect or preserve the stock in Prospect Telecom's replevin action; and (4) the Trustee has taken the position with the secretary of FACS that Prospect Telecom's possession of the stock certificate merely perfects its lien and does not constitute a transfer of NYSI's ownership interest in FACS to Prospect Telecom, which if true, would negate the need for the appointment of the Trustee in the first place.

The Debtor misses the mark.[2] As set forth in the Court's oral ruling of December 23, 2005, the Court was urged to appoint a trustee by a party in interest <u>and</u> by the U.S. Trustee, and the Court appointed the Chapter 11 Trustee for a number of reasons. (*See* discussion and transcript of ruling *supra*) As stated, the Court found, among other things, that the Debtor

---

[2] The Court did not act, as the Debtor would suggest, solely because of the existence of conflicts that would be inherited by a trustee stepping into the Debtor's shoes. Nor did the Court find it necessary to rely on what occurred in earlier state court proceedings.

demonstrated a lack of candor, failed to disclose to anyone in the chapter 11 case the situation with Prospect Telecom and the post-petition transfer of NYSI's stock interests, and permitted the potential loss of a major asset of the estate. He did these things while he was acting as a debtor-in-possession. Whether by virtue of his action (or inaction) in the replevin suit, the Debtor merely allowed Prospect Telecom to perfect a lien in the stock, or whether he permitted the transfer of ownership, does not change the outcome or the Court's view. The Debtor stood by, to the potential detriment of creditors and other parties in his bankruptcy case, while a significant asset was encumbered or transferred. The Debtor has suggested that he did nothing because he did not know what to do, and/or because he felt he had no defense and to assert one would have been inappropriate. However, other than to consult his personal bankruptcy counsel, the Debtor took no steps to get legal advice for NYSI or otherwise to determine if a defense could be lodged or other proper action could be taken.

At the February 22, 2006 hearing on the Motion for Stay, the Debtor raised for the first time the argument that Section 18-304 of the Delaware Code operates to divest a member of a Delaware L.L.C. of the power to act if the member becomes a debtor under the Bankruptcy Code.[3] Mr. Modanlo argued, therefore, that any failure to act for NYSI in the replevin action

---

[3] DEL. CODE ANN. 6, § 18-304 (2005). Section 18-304 provides in relevant part:

§ 18-304 **Events of Bankruptcy.**

A person ceases to be a member of a limited liability company upon the happening of any of the following events:
    (1) Unless otherwise provided in a limited liability company agreement, or with the written consent of all members, a member:
        b. Files a voluntary petition in bankruptcy.

was at worst "harmless error." But such matters not raised at trial or hearing are not reviewable on appeal, and, therefore, it is difficult to imagine how this new argument could enhance the Debtor's prospects of succeeding on the merits of the appeal.

The Court found the Debtor's actions to constitute the type contemplated under 11 U.S.C. § 1104(a) and, accordingly, appointed a Trustee. Given the record in this case, the Court does not believe that the Debtor is likely to succeed on the merits of his appeal.

### *Harm to the Debtor if the Stay is Not Granted*

The Debtor argues that the Trustee has violated the by-laws of FACS and also an order of the Circuit Court for Montgomery County by attempting to remove the Debtor from the board of FACS. He also states that the Trustee's actions are a waste of time and resources because they prevent the Debtor from utilizing his unique knowledge and talent in connection with post-trial matters in the General Dynamics litigation so as to ensure the future success of FACS. He further argues that the Trustee's "half a dozen lawyers" are incurring significant legal fees that will be borne by the Debtor's estate.

The Court is not persuaded that the Trustee's actions are wasteful simply because Mr. Modanlo has more experience in these particular litigation matters, or that the Trustee's legal fees will harm the estate. Indeed, the Trustee and his counsel have substantial litigation experience in their own right. Furthermore, since Mr. Modanlo clearly has an interest in the outcome of any litigation of the estate as Debtor (albeit not as debtor-in-possession), it behooves him to assist the Trustee by providing the benefit of this Debtor's knowledge and experience in this case, and it behooves the Trustee to ask. Finally, mere injuries in terms of time and money

expended if a stay is not imposed are insufficient to satisfy this factor of the test. *Long*, 432 F.2d at 980.

### *Harm to Others if the Stay is Imposed*

In his Motion to Stay, the Debtor argues that the judgment rendered in Mr. Ahans' favor against the Debtor for an amount in excess of $100 million will be reversed, and that Mr. Ahan (who moved for the Trustee appointment) will thereafter not be a creditor at all. Even assuming arguendo that this is true, the removal of Mr. Ahan as a creditor at this juncture would not eliminate the harm to others. Mr. Ahan is not the Debtor's only creditor. As reflected on the Debtor's Second Amended Schedules [82] filed on January 3, 2006, creditors other than Mr. Ahan exist and they hold a stake in this case. The Court found among other things, that the Debtor has endangered the estate through post-petition mismanagement or incompetence, and a lack of candor and cooperation. The balance of harm to the estate by the continuation of the Debtor's stewardship outweighs the harm to the Debtor if the stay is not imposed. The immediate installation of a Trustee of an independent third party with no involvement in the existing disputes between the Debtor and Mr. Ahan does, on balance, best serve the interests of the entire constituency in this case.

### *Public Interest to be Served by Granting a Stay*

The Debtor argues that the public interest would be better served by permitting him to continue in a leadership role in this case. As support for this proposition, the Debtor argues that the non-voting stockholders of FACS have placed their trust in him and the other two board members (in part because he has devoted substantial time to obtaining a successful result for FACS in the General Dynamics litigation). He further argues that the public interest is not

served because the Trustee is acting in violation of FACS' by-laws.  The Court is not convinced that the Trustee is acting against the public interest and that his appointment should be stayed.  Even if this were true, there are other actions that can be taken to stem improper or illegal action by a party in a case, including a Trustee.[4]

## **Conclusion**

For the foregoing reasons, the Motion for Stay is DENIED.

 A separate Order will issue.


cc:	Debtor
	Joel S. Aronson, Esq.
	Michael Ahan
	Bradford F. Englander, Esq.
	Creighton R. Magid, Esq.
	Joseph Suntum, Esq.
	Richard Goldberg
	John Daugherty
	U.S. Trustee

---

[4] The Court notes that on February 8, 2006, the Trustee filed an Emergency Motion [111] for Authority to Take Actions in Connection with Subsidiaries, which raises certain issues about the Trustee's actions with respect to FACS.  The Debtor has filed an Opposition [119] to this Motion.  The parties appear to address these issues in those papers.