IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: NADER MODANLO          :

                               :

NADER MODANLO                  :

                               :

     v.                        : Civil Action No. DKC 2006-1181

                               :

MICHAEL H. AHAN, ET AL.        :

                               :

**MEMORANDUM OPINION**

This case is before the court on appeal from the order of United States Bankruptcy Judge Nancy V. Alquist approving post-petition financing in the Chapter 11 case filed by Nader Modanlo ("Debtor"), Case no. 05-02-26549-NVA. (Paper 7). Oral argument is deemed unnecessary because the facts and legal arguments are presented adequately in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed.R.Bankr.P. 8012. For the reasons that follow, the court will affirm the bankruptcy court's order.

**I.   Background**

The court has recounted the facts in Debtor's bankruptcy case in two previous orders, *Modanlo v. Ahan*, Civ. Action No. DKC 2006-0268 (D.Md. Apr. 17, 2006) and *Modanlo v. Ahan*, Civ. Action No. DKC 2006-0268 (D.Md. May 2, 2006), although some repetition is helpful in order to understand the current posture of the case. Debtor has been involved in ongoing litigation over the management of two

companies, Final Analysis, Inc. ("FAI"), and Final Analysis Communications Services, Inc. ("FACS"), which he founded with Michael Ahan ("Ahan") in the early 1990s. FAI is an engineering company. FACS was established to develop and operate a worldwide satellite telecommunications system. When FACS was formed, FAI owned 100% of FACS's voting shares.

In the late 1990s, disputes arose between Debtor and Ahan over the management and direction of the companies. In 2001, FAI filed an involuntary petition under Chapter 11 of the Bankruptcy Code. As part of FAI's bankruptcy, the bankruptcy court ordered FAI to sell its assets, which included a majority of the outstanding stock in FACS. A company solely owned by Debtor, New York Satellite, LLC ("NYS"), was the successful bidder for the stock.[1]

Debtor filed his petition under Chapter 11 of the Bankruptcy Code on July 22, 2005.

Two cases currently on appeal are related to Debtor's bankruptcy. In 2001, fourteen shareholders of FACS filed direct and derivative claims against FACS, FAI, and Debtor in the Circuit Court for Montgomery County, alleging misappropriation, fraud, and breach of fiduciary duty on the part of Debtor and FAI.[2] On October 22, 2004, a jury found that Debtor had breached a fiduciary

_____

[1] In the papers, NYS also is referred to as New York Satellite Industries, LLC ("NYSI").

[2] Ahan was a party to the Montgomery County litigation. He is identified as a "third-party defendant/counterclaim-plaintiff."

2

duty owed to Ahan and awarded him $103.93 million ("state court judgment"). The state court judgment is on appeal. As a result of the judgment, Ahan is Debtor's largest creditor.

Second, on September 6, 2005, FACS obtained a verdict in the United States District Court for the District of Maryland against General Dynamics, Case no. PJM 03-307 ("federal court judgment"). The jury in the General Dynamics litigation originally awarded FACS $129 million. The award was reduced to $11.87 million after Judge Messitte granted in part a motion for judgment as a matter of law. That case also is on appeal.

On January 10, 2006, the bankruptcy court approved the appointment of a Trustee, Christopher B. Mead ("Trustee"). At an initial meeting between Ahan and the Trustee, Ahan preliminarily offered to make a $50,000 loan to the estate. The offer was followed by more negotiation sessions and resulted in the loan at issue in the present appeal. The Trustee also attempted to obtain a loan from other creditors to the estate, but his request was denied.

On February 16, 2006, the Trustee sought the bankruptcy court's approval of the loan by filing a motion seeking approval for post-petition financing pursuant to 11 U.S.C. § 364(c)(1). The Trustee stated that the loan is needed so that he could fulfill his duties, such as operating Debtor's businesses, investigating the financial affairs of Debtor, investigating and collecting property

3

of the estate, reviewing claims of creditors, and, if advisable, opposing the discharge of Debtor. The Trustee asserted that the loan was necessary because Debtor's estate lacks cash resources to fund these expenses.

On March 9, 2006, the bankruptcy court held a hearing on the Trustee's motion. As of the date of the hearing, Debtor had at least $110 million in claims against him and potentially no assets to repay those claims.[3] The only evidence introduced during the hearing was the Trustee's testimony by proffer. Debtor did not cross-examine the Trustee and did not present any evidence in support of his opposition. At the end of the hearing, the bankruptcy court issued an oral ruling approving the loan, and on April 12, 2006, the bankruptcy court issued a written order.

The terms of the loan approved by the bankruptcy court are as follows. The initial principal amount is to be $50,000, with the opportunity for Ahan, in his discretion, to advance an additional $200,000.[4] The interest rate is 6% per annum with default interest at 8% per annum. The loan is secured by a first priority security interest in all personal property of the estate now owned or

---

[3] According to proffered testimony, unless the Trustee uncovered additional sources of assets, Debtor's estate likely would remain without funds unless funds were made available from the two subsidiaries in which the Debtor owns all or a majority of the interests (NYS and FACS).

[4] Thus, the maximum principal amount outstanding could be increased to and capped at $250,000.

hereafter acquired, including, without limitation, avoidance actions under Chapter 5 of the Bankruptcy Code. The loan grants Ahan a super-priority claim over any and all administrative expenses of the estate, except that repayment of the loan is subordinated in priority to the allowed professional fees and expenses of the Trustee and the Trustee's commissions (other than fees, costs, expenses and commissions that constitute "Excluded Uses" under the loan agreement). There are no closing or other costs associated with the loan. The loan is to be repaid upon the maturity date, which would occur (a) two years from the date of the loan agreement, (b) in the occurrence of a default, or (c) the resignation or replacement of the Trustee, whichever occurs first. The loan may be pre-paid, although no payments are required before the maturity date. The loan permits Ahan to examine and copy the records and books of Debtor's estate, but expressly states that the Trustee is not required to provide any attorney-client work product or information or documents that are privileged. The Trustee also must provide a monthly statement to Ahan detailing his fees and costs. Finally, if the Trustee decides to obtain a loan from another source, the Trustee first would need to pay off the loan.[5]

The loan carries one restriction: the Trustee may not use the loan proceeds for any "Excluded Use(s)," which are defined as:

---

[5] This last provision was discussed during the bankruptcy court's hearing. (Paper 1, Tr. 40).

5

> (1) fees, costs and/or expenses arising from,
> or in connection with, investigation,
> litigation, prosecution or defense of any
> claim or cause of action by or against any of
> the Lender, Protolex LLC, Starnew LLC or the
> Shareholder Claimants, or any of their
> respective agents, representatives or
> professional persons; (2) fees, costs or
> expenses incurred by or for any professional
> person engaged by or at the request of the
> Debtor, including, but not limited to, Joel S.
> Aronson, Ridberg Sherbill & Aronson LLP, and
> Sheppard Mullin Richter & Hampton LLP; (3) any
> administrative expense or claim for
> substantial contribution incurred by or on
> behalf of any person other than the Trustee;
> and (4) payment of any pre-petition claim in
> connection with the Chapter 11 Case.[6]

(Paper 1, Loan and Security Agreement, § 1.01).

In the oral ruling, the bankruptcy court found that the Trustee had "complied with Section 364 and has jumped through the hoops that he is required to jump through to demonstrate that financing in this case was not available to the estate on terms less onerous than the financing that is being proposed" and that the terms of the loan were "reasonable." (Paper 1, Tr. 54). The court expressed concern regarding the Excluded Uses but stated that such a provision "is, in the Court's experience, not an entirely unusual one in debtor in possession loans." *Id*. at 55. The bankruptcy court also noted that "[t]here is no prohibition on the Trustee's investigating and proceeding with action against any

---

[6] Joel Aronson is Debtor's bankruptcy attorney. Sheppard Mullin Richter & Hampton LLP has offered to take on the appeal litigation relating to the state court judgment on a contingency basis. (Paper 1, Tr. 22).

6

creditor or any party in this case." *Id.* The bankruptcy court found that, as a matter of law, a trustee may make a loan from a pre-petition creditor "as long as no express or implied conditions exist that would impair the Trustee's objectivity in using the funds," *id.* at 56, and that there were no such express or implied conditions in the proposed loan.[7]

Addressing Debtor's concerns that the Trustee could not remain disinterested based on the loan's terms, the bankruptcy court found that the loan did not result in the Trustee having a "material adverse interest" to any party in the bankruptcy proceeding. The court noted that if, in the future, the Trustee's objectivity became compromised, "there are remedies that may be pursued." (Paper 1, Tr. 57-58). The court also stated:

> One of the issues raised by the debtor has been that the lender, being a creditor in this case and a litigant in this case, could simply act arbitrarily and capriciously where he's become unhappy with the Chapter 11 Trustee's actions and fail to advance. Well, any lender could do that presumably for - - under many

---

[7] At the start of the hearing, the bankruptcy court identified two concerns about the original form of the loan agreement: (1) that the Trustee's confidential information may be shared with Ahan as a result of the loan and (2) the procedures Ahan would need to go through to enforce his lien in the event of a default. The Trustee told the bankruptcy court that there was no intention to provide Ahan with privileged information, and the Loan and Security Agreement has been amended to clarify this point. The bankruptcy court also was told that in the event of default, Ahan would be required to go through the requisite procedures to foreclose on his collateral. In his appeal, Debtor has not raised concerns relating to confidential information or the procedures Ahan must go through to foreclose on the collateral if Ahan chose to do so.

> debtor in possession facilities for almost any
> reason.
>
> But the Court's concern was whether there's
> anything in this agreement that would preclude
> the Chapter 11 Trustee from going elsewhere
> for additional financing, should that happen.
> And the facility, as proposed, does not
> preclude the Trustee from going elsewhere and
> obtaining another DIP loan, except to the
> extent of the funds that have already been
> drawn under the agreement. They would need to
> be paid off first. But there is no other
> prohibition.

*Id.* at 52-53.

In the written order, the bankruptcy court found that (1) the Trustee was unable to obtain financing for the estate pursuant to § 364(a) and (b) without granting a super priority claim and first priority lien; (2) good cause was shown based on, *inter alia*, the Trustee's need for financing for administrative expenses; (3) although Ahan is asserting a large pre-petition claim against Debtor, the loan was negotiated "in good faith and at arm's length" between the Trustee and Ahan; and (4) the loan is in the best interests of Debtor's estate.

## II.  Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992); *Travelers Ins. Co. v. Bryson Prop., XVIII (In re Bryson Prop., XVIII)*, 961 F.2d 496, 499

8

(4th Cir. 1992), *cert. denied sub nom., Bryson Prop., XVIII v. Travelers Ins. Co.*, 506 U.S. 866 (1992).

## III.  Analysis

Debtor presents the following issue on appeal: "Did the Bankruptcy Court err when it held that the bankruptcy trustee would remain disinterested even if he were allowed to borrow money on the stated terms from the estate's largest creditor who holds a disputed, contingent unsecured claim for nearly $104 million that is the subject of a pending appeal?" (Paper 7, at 1-2).

Debtor's appeal implicates several sections of the bankruptcy code.  First, 11 U.S.C. § 364, allows a trustee to obtain post-petition credit on behalf of the estate.  This section provides in relevant part:

> (a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.
>
> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.
>
> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

9

(1) with priority over any or all
administrative expenses of the kind
specified in section 503(b) or 507(b) of
this title;

(2) secured by a lien on property of
the estate that is not otherwise subject
to a lien; . . .

Debtor's argument also implicates 11 U.S.C. § 101(14) because
a trustee must be a "disinterested person." Citing to 11 U.S.C. §
1104(d), the United States Court of Appeals for the Sixth Circuit
explained:

Given the sensitivity of these tasks and the
objectivity required to perform them, the Code
requires all examiners, like all Chapter 11
trustees, to be "disinterested." [11 U.S.C.] §
1104(d). A defined term, "disinterested
person" means a person who:

(A) is not a creditor, an equity
security holder, or an insider;

(B) is not and was not an investment
banker for any outstanding security
of the debtor;

(C) has not been, within three years
before the date of the filing of the
petition, an investment banker for a
security of the debtor . . . ;

(D) is not and was not, within two
years before the date of the filing
of the petition, a director,
officer, or employee of the debtor
or of an investment banker specified
in subparagraph (B) or (C) of this
paragraph; and

(E) does not have an interest
materially adverse to the interest
of the estate or of any class of
creditors or equity security

10

> holders, by reason of any direct or
> indirect relationship to, connection
> with, or interest in, the debtor or
> an investment banker specified in
> subparagraph (B) or (C) of this
> paragraph, or for any other reason.

*Id.* § 101(14).

*In re Big Rivers Elec. Corp.*, 355 F.3d 415, 429-30 (6th Cir. 2004). Furthermore, § 101(14)(E), the "catch all clause" in the definition of "disinterested person," implicates only personal interests of the trustee, not actions undertaken as fiduciary. *In re BH & P Inc.*, 949 F.2d 1300, 1309-10 (3rd Cir. 1991). *See also In re Dynamark, Ltd.*, 137 B.R. 380, 381 (Bankr.S.D.Cal. 1991)(stating that a disinterested person is "one that can make unbiased decisions, *free from personal interest*, in any matter pertaining to the debtor's estate")(emphasis added).

Debtor does not appear to object to the bankruptcy court's findings that the Trustee has satisfied § 364(c). Rather, Debtor objects to the bankruptcy's court's finding that the loan does not impair the Trustee's objectivity or disinterested status. As will be explained below, the bankruptcy court found, properly, both that the trustee's request met the statutory requirements and that the transaction would not undermine his status as a disinterested person.

To obtain financing, the trustee must satisfy the following: (1) that the trustee is "unable to obtain unsecured credit per 11 U.S.C. § 364(b)," (2) "The credit transaction is necessary to

11

preserve the assets of the estate; and (3) The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender."[8] *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr.E.D.Pa. 1987).

Courts have recognized that pre-petition creditors are an important source of post-petition secured loans to the debtors. A bankruptcy court in *In re FCX, Inc.*, 54 B.R. 833 (Bankr.N.C. 1985), referred to such situations as "The Chapter 11 Dilemma." The court explained:

> One of the first problems faced by a chapter 11 debtor in possession is the need for operating funds. The debtor is prohibited from using cash collateral without court approval or the consent of the secured creditor (11 U.S.C. § 363(c)(2) ), and, if the debtor's assets are encumbered, obtaining postpetition financing from a new lender, at least at the beginning of the case, is extremely difficult. The debtor may elect to litigate with the secured lender to obtain the use of cash collateral or to use the secured creditor's collateral to secure a loan from a third party lender. The debtor's other option is to negotiate a postpetition financing arrangement with the secured creditor.
>
> Like the debtor, the secured lender is also faced with a predicament concerning the postpetition financing of debtor's operations. If postpetition financing is not provided, the debtor's business will close, the going concern value of the creditor's collateral will be lost, and the creditor's risk of loss is increased. In spite of those factors, however, creditors are understandably reluctant to lend to a chapter 11 debtor in

---

[8] The statute also expressly requires notice and a hearing.

12

> possession having the protection of the
> automatic stay and possessing the powers of a
> bankruptcy trustee.
>
> Frequently, the result is a postpetition
> financing agreement calling for substantial
> concessions from the debtor, often at the
> expense of the rights of unsecured creditors.
> Section 364 of the Bankruptcy Code provides
> that, if necessary, the post-petition lender
> may be given security in the debtor's assets,
> and a priority ahead of all costs of
> administration. Many lenders, however, want
> more, and it is not uncommon for the debtor
> and the secured creditor to ask the court to
> approve a lending arrangement containing terms
> favoring the lender which far exceed those
> authorized by § 364.

*Id*. at 838. *See also Matter of Zech*, 185 B.R. 334, 337
(Bankr.D.Neb. 1995)("Section 364(c)(1) and (2) of the Bankruptcy
Code . . . are incentives for creditors to extend credit in the
post-petition period.").

Where the proposed post-petition loan is provided by a pre-
petition creditor and the terms of the loan have the potential to
create a conflict of interest between the trustee and the creditor,
two courts have held that such loans are permissible unless the
proposed loan terms "attached unacceptable express or implied
conditions to its loan which might exert unacceptable control over
the Trustee in the exercise of his fiduciary duties." *In re
Hartley*, 39 B.R. 273, 278 (Bankr.W.D.Ohio 1984); *see also In re
McKenzie Energy Corp.*, 228 B.R. 854, 875 (Bankr.S.D.Tex.
1998)(approving the loan from a pre-petition creditor where there

were "no limitations express or implied on the trustee's ability to act independently on behalf of his estates").

Debtor argues that "[b]y borrowing money from a disputed, contingent creditor, and especially by borrowing money on the proposed terms, the Chapter 11 Trustee will no longer be disinterested.  He will, in fact, have an interest in serving the needs of his financier, to the benefit of the financier, and the detriment of all others."  (Paper 7, at 4).  Specifically, Debtor objects to the following loan terms: (1) that the lender may "in his sole and absolute discretion, make one or more advances of principal to the Borrower . . . [and] Lender shall have no obligation to make any Further Advance" (paper 1, Loan and Security Agreement § 2.01); (2) the provision involving excluded uses, *id.* at § 2.06; (3) the provision that gives Ahan a super-priority lien, *id.* at § 3.01; and (4) the remedies provision that allows Ahan to take collateral in the event of a default, *id.* at § 8.05.[9]

Debtor questions whether the Trustee will be able to remain disinterested based on these terms:

> What happens when the Trustee has to decide
> whether to pursue the appeal of Mr. Ahan's
> judgment?  Is his decision whether to pursue
> the appeal or settle, and the terms of that
> settlement, subject to undue influence due to
> the fact that Mr. Ahan is both the largest
> creditor and his financier?  Will the Trustee
> have to choose between pursuing an appeal and

---

[9] Other than listing this provision, Debtor's argument does not address specifically why he objects to this provision.

> having his fees paid?  Even if the Trustee is
> successful in appealing Mr. Ahan's judgment,
> Mr. Ahan could gain control of New York
> Satellite Industries, LLC through a loan
> default.  Will the Trustee be pressured to
> pursue certain matters, or refrain from
> pursuing others, because Mr. Ahan conditions
> his loan advances, which are "in his sole and
> absolute discretion"?  L&S § 2.01.  These are
> questions that should not have to be asked of
> a disinterested person acting in a fiduciary
> capacity.

(Paper 7, at 8).  In support, Debtor relies primarily on *In re Big Rivers Corp.*, 355 F.3d at 434-35.  Debtor also expresses concern about the potential impact of the loan on the state court judgment.  "It is true that because the Trustee is forbidden from using Mr. Ahan's post-petition funds to perform this investigation, he can use other funds of the estate for this investigation.  In making his decisions as to whether to go forward with that appeal, however, the Trustee must decide between challenging claims against the estate and appeasing his financier."  (Paper 7, at 10).

The Trustee argues that courts regularly approve post-petition financing from interested parties.  Courts also have approved post-petition financing with terms that require a debtor to waive its claims against the lender or to waive rights to contest the lender's existing claims.  By contrast here, the trustee argues, "no rights are being waived, taken away or altered by the DIP Order or DIP loan, and there is no provision that precludes the Trustee from investigating or proceeding with any action against any

creditor, including the lender."[10]  (Paper 10, at 12)(citing *In re Hartley* and *In re McKenzie Energy Corp.*).

Debtor responds that the Trustee's argument is based on an assumption that a bankruptcy trustee is the equivalent of a debtor in possession.  Debtor does not dispute that courts have approved loans similar to the proposed loan for debtors in possession, but states that this case is different because it involves a loan agreement with a trustee.  The difference is that the bankruptcy code requires a trustee to be disinterested, but it does not require a debtor in possession to be disinterested.  (Paper 12, at 2-3).  Debtor also contends that *In re Harley* and *In re McKenzie Energy Corp.* are distinguishable.  Finally, Debtor disagrees that there are no express or implied conditions placed upon the financing and he argues that the loan is not in the best interests of the estate because of the potential impact on the state court judgment that is under appeal.

The bankruptcy court's finding that the terms of the loan would not impair the Trustee' objectivity is supported by the record.  The Trustee was prepared to testify that nothing in the loan agreement precluded him from carrying out his duties as Trustee, conducting any investigation or litigation, or taking

_____

[10] Ahan has joined in the Trustee's brief.  (Paper 11).  Ahan asserts that Debtor is trying to limit the effectiveness of the Trustee by depriving the Trustee of necessary funds.  He also argues that the loan does not affect the Trustee's status as a disinterested person and that the Trustee is not Ahan's "lackey."

other actions with respect to the parties identified in the Excluded Uses. (Paper 1, Tr. 21-22). He also was prepared to testify that he already had begun to investigate the parties identified in the Excluded Uses and that he would complete that investigation. *Id.* at 22. The court was told the Trustee could still obtain future loans from other sources. *Id.* at 40. Debtor's argument that Ahan will be able to exert undue influence over the Trustee because the Trustee may need additional funds is unpersuasive because, as the bankruptcy court pointed out, the terms of the loan agreement do not prevent the Trustee from seeking funds from other sources.

Debtor contends that the bankruptcy court improperly relied on *In re Hartley* and *In re McKenzie*. In *In re Hartley*, the trustee filed a motion to obtain financing pursuant to § 364(c) in the form of a $25,000 loan from Union Oil, an unsecured, pre-petition creditor.[11] The only condition on the money was that the trustee provide the creditor with periodic assessments on the progress of the litigation. Three parties objected to the proposed borrowing on grounds that included conflict of interest. The bankruptcy court found that there was no evidence that the terms of the loan provided express or implied conditions that "might exert unacceptable control over the Trustee in the exercise of his

_____

[11] The trustee later sought approval for funding pursuant to 11 U.S.C. § 364(b) instead of § 364(c). *In re Harley*, 39 B.R. at 277.

17

fiduciary duties." *In re Hartley*, 39 B.R. at 278.  The court also rejected the argument that the creditor might receive favorable treatment because of the loan:

> The implication, of course, is that the loan is the quid pro quo for the Trustee's not asserting a similar claim against Union Oil. As indicated previously, however, no agreements have been made between the Trustee and Union Oil and, specifically, *the Trustee has made no agreements not to pursue any claims against Union Oil or any other creditor*.

*Id.* at 279 (emphasis added).

In the second case, *In re McKenzie*, the bankruptcy court relied on *In re Hartley* to find that a post-petition financing agreement did not create a conflict of interest for the trustee. *McKenzie*, 228 B.R. at 875.  The loan agreement required the trustee to give the creditor a budget and to make available non-privileged information concerning the administration of the estate in order to obtain an advance under the loan agreement.  *Id.* at 862.  Several parties objected to the loan agreement on grounds that included a concern that "the trustee's judgment would be clouded in the exercise of his fiduciary duty to the other creditors."  *Id.* at 862.  The court found the terms of the financing agreement created "no limitations express or implied on the trustee's ability to act independently on behalf of his estates."  *Id.* at 875.

Here, the bankruptcy court considered whether there were any express or implied conditions that might allow Ahan to exert

control over the Trustee or to cloud the Trustee's judgment. Similar to the courts in *In re Hartley* and *In re McKenzie Energy Corp.*, the court found that there were no such conditions.[12]

Debtor contends that these cases are distinguishable because (1) the claims of the potential lenders were not in dispute, (2) the loans in those cases did not have any restrictions on the use of the funds, and (3) the receipt of future funds was not "at the whim" of a contingent creditor. (Paper 7, at 11-12). In his reply brief, he also contends that the cases are distinguishable because those courts found that the financing agreements had no express or implied conditions. Debtor's arguments are unpersuasive. First, the cases do not state expressly that the claims of the potential lenders were not in dispute. Moreover, in *Hartley*, the court noted that the Trustee had made no agreements not to pursue claims against the lender, which indicates that the lender's claim *was* in dispute. *In re Hartley*, 39 B.R. at 279. Second, the bankruptcy court found that the Excluded Uses were reasonable, and Debtor has provided no evidence or argument to dispute this finding. This distinction, therefore, is immaterial. Third, as discussed previously, the receipt of future funds are not at the whim of Ahan but rather based on the Trustee's ability to pursue other funding sources. Fourth, Debtor's argument that there were no express or

---

[12] In *McKenzie*, the creditor arguably imposed greater limits on the money because the Trustee had to give the creditor a budget.

implied conditions in *Hartley* and *McKenzie* misstates the holdings in those cases.  The courts did not find that there were no "express or implied conditions" but rather that there were no express or implied conditions that would allow the creditor to exert unacceptable control over the Trustee.  *In re Hartley*, 39 B.R. at 278-79; *In re McKenzie Energy Corp.*, 228 B.R. at 875.  This argument, therefore, is without merit.

Moreover, Debtor's reliance on *In re Big Rivers Corp*. is misplaced.  As the bankruptcy court noted, this case did not involve a post-petition finance loan pursuant to § 364.  The case involved an examiner who sought a "success fee" from several unsecured creditors based on the "new value" he brought to the estate.  *In re Big Rivers*, 355 F.3d at 423.  The examiner sought this personal compensation in secret, without the knowledge of the debtor, the trustee, or other creditors.  Although the Court of Appeals for the Sixth Circuit spoke at length about the obligation of an examiner to remain disinterested, the discussion arose from the question of the proper sanction for the examiner's conduct. *Id*. at 443.  The case, therefore, has little application to the issue presently before the court.  Finally, it bears emphasis that § 101(14)(E) implicates only personal interests of the trustee, not actions undertaken as fiduciary.  *In re BH & P Inc.*, 949 F.2d at 1309-10; *In re Dynamark, Ltd.*, 137 B.R. at 381.

20

Debtor's remaining arguments are equally unpersuasive. Debtor's contention that the Trustee's argument is based entirely on cases involving debtors in possession is inaccurate. Although the Trustee's arguments identified the proposed loan as a "DIP loan," § 364 allows specifically empowers a *trustee* to pursue post-petition loans. Moreover, the two cases the Trustee relies on, *In re Hartley* and *In re McKenzie Energy Corp.*, specifically involved trustees who sought § 364 financing. Debtor's argument that the interests of the estate and creditors are best served by the Trustee prosecuting the state court appeal is irrelevant to the issue of whether the loan makes the Trustee disinterested, in part because there is no evidence that the Trustee has even made a decision on the appeal, much less that this decision was influenced by the proposed loan.

## IV.  Conclusion

For the reasons stated above, the court will affirm the ruling of the bankruptcy court.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge