

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| In re: | * | |
| NADER MODANLO, | * | Case No. 05-26549-NVA |
| | | Case No. 06-10158-NVA |
| NEW YORK SATELLITE INDUSTRIES, LLC. | * | (Chapter 11) |
| | * | |
| Debtors | | Jointly Administered Under: |
| | * | 05-26549-NVA |

MEMORANDUM IN SUPPORT OF ORDER [440] **GRANTING** IN PART AND **DENYING** IN PART TRUSTEE'S MOTION FOR JUDGMENT ON DEBTOR'S MOTION [DOC. 367] TO DISMISS CHAPTER 11 CASES AND FOR OTHER RELIEF, AND SETTING HEARING

I.  **Introduction**

This matter came before the Court on the third day of a hearing on Debtor Nader Modanlo's[1] Motion [doc. 367] to Dismiss the Nader Modanlo and New York Satellite Industries, LLC Bankruptcy Cases, or in the Alternative, to Remove the Trustee for Cause or Vacate the

---

[1] Nader Modanlo is the Debtor in the main case of the above-captioned jointly-administered bankruptcy cases. He is also a party in interest in the New York Satellite Industries, LLC bankruptcy case, and as such, has standing to bring a motion to dismiss that bankruptcy case.

1

Court's Order [doc. 70] Directing Appointment of a Chapter 11 Trustee ("Motion to Dismiss").[2] On the third day of hearing (November 3, 2008), Debtor Nader Modanlo concluded his presentation of evidence in support of the Motion to Dismiss his personal chapter 11 case ("Nader Modanlo Case") and the chapter 11 case of affiliate New York Satellite Industries, LLC ("NYSI Case"). At this juncture, counsel for Christopher Mead, the Trustee in the Nader Modanlo Case, made an oral motion for judgment ("Motion for Judgment") against the Debtor on the Motion to Dismiss. He was joined by parties-in-interest Michael Ahan, Final Analysis Communication Services, Inc.[3] and the United States Trustee. Nariman Modanlo, a party in interest, the Debtor's brother and a creditor of Nader Modanlo, joined in opposition to the Trustee's Motion for Judgment.

For reasons stated herein, the Court grants in part and denies in part the Motion for Judgment. The Motion for Judgment is *granted* with respect to the portions of the Motion to Dismiss that seek to have the Court remove the Trustee and vacate its earlier Order [doc. 70] appointing the Trustee. In other words, the Motion to Dismiss is denied as to the two counts seeking elimination of the Trustee. The Motion for Judgment is *denied* with respect to the portion of the Motion to Dismiss that seeks to have the Court dismiss the two bankruptcy cases under §1112(b) of the Bankruptcy Code.[4] Accordingly, proceedings on the Motion to Dismiss under §1112(b) will now continue and will resume at the stage at which the Trustee and other

---

[2] Hearings were conducted on August 26 and 29, 2008 and November 3, 2008. The transcripts for these hearings are referenced herein as "Tr. I" for the August 26 hearing, "Tr. II" for the August 29 hearing, and "Tr. III" for the summations given at the November 4 hearing.

[3] In re Final Analysis Communication Services, Inc., Case No. 06-18520 ("FACS Case") was commenced on December 29, 2006. Numerous hearings and much discovery has been conducted in that case, principally directed to the issues raised by stockholder factions about whether FACS is properly the subject of a bankruptcy case and whether Mr. Mead and/or NYSI acted properly in taking certain steps that resulted in the FACS chapter 11 filing.

[4] The bankruptcy Code is found at title 11 of the United States Code.

opponents of the Motion to Dismiss will present their cases in opposition.

## II.     Jurisdiction and Venue

This Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and District Court Local Rule 402 of the United States District Court for the District of Maryland. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

## III.    Legal Standard

The matters before the Court are contested matters. Federal Rule of Bankruptcy Procedure 9014 deals with contested matters. Rule 9014(c) incorporates Bankruptcy Rule 7052, entitled "Findings by the Court." Bankruptcy Rule 7052, in turn, incorporates Federal Rule of Civil Procedure 52. Federal Rule of Civil Procedure 52(c) states:

> Judgment on Partial Findings
>
> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Under this Rule, a court assesses the evidence presented and may render judgment if the evidence is insufficient to support a claim or defense.[5] *See Carter v. Ball*, 33 F.3d 450 (4th

---

[5] The Court has construed the parties' oral Motion for Judgment as a motion for judgment on partial findings. The Court notes that a Motion for Judgment as a Matter of Law ("JMOL") is not the proper motion to be brought in this case, as there is no jury; instead, the proper motion is a Motion for Judgment on Partial Findings under Rule 52(c). A Motion for Judgment on Partial Findings was formerly and still is informally referred to by some as a Motion for

Cir.1994); FED. R. CIV. PROC. 52 Advisory Committee Note (2007) (noting that "[t]he standards that govern judgment as a matter of law in a jury case have no bearing on a decision under Rule 52(c)"). The Court is required by Federal Rule of Civil Procedure 52(a) to "find the facts specially and state its conclusions of law separately."

### IV.    Findings of Fact

*A.  Appointment of the Trustee*

The Trustee, Christopher Mead, was appointed by Court Order [doc. 70] on December 23, 2005. This Order was entered after the Court conducted an emergency three-day evidentiary hearing regarding the need to appoint a trustee. The Court found that New York Satellite's major asset, and perhaps its only asset, was its stock in a company known as Final Analysis Communication Services, Inc. ("FACS"). That stock had been transferred to an entity known as Prospect Telecom. Prospect Telecom had acquired the stock in a replevin action it brought against New York Satellite Industries ("NYSI") in October of 2005 in the District Court for Montgomery County, Maryland. Mr. Modanlo, who controlled NYSI at the time, took no steps to have NYSI defend against this action in any way. Dec. 23, 2005 Tr. [doc. 81] 12-13. The Court found that Mr. Modanlo should have taken steps proactively to try to protect these assets, and accordingly, that the Debtor exercised poor business judgment in late 2005. This was among the reasons the Court directed the appointment of a trustee.

---

Directed Verdict. FED. R. CIV. P. 50 Advisory Committee Note (1991). The most recent amendment to Rule 52(c) sought to clarify discrepancies regarding the applicable legal standard for such a motion. The penultimate version of the Rule used the phrase "judgment as a matter of law," which was subsequently revised in 2007 to, simply, "judgment." The Advisory Committee Notes state that the change was made to "avoid any confusion with a Rule 50 judgment as a matter of law in a jury case." Furthermore, the standards for JMOL "have no bearing on a decision under Rule 52(c)." This clarification has been recognized by the Fourth Circuit and at least one other circuit. *Carter v. Ball*, 33 F.3d 450 (4th Cir.1994); *accord Geddes v. Northwest Missouri State Univ.*, 49 F.3d 426, 429, n.7 (8th Cir.1995).

Since his appointment, the Trustee has carried out his fiduciary duties to the Nader Modanlo estate. He has filed monthly operating reports, investigated the assets of the estate and met with various creditors and parties-in-interest in the bankruptcy cases. Nader Modanlo himself testified that the Trustee conducted a "Litigation Day" in August 2006, when the Trustee invited parties-in-interest to present their positions and contentions to him as he decided on how to proceed with the administration of the Modanlo estate. After taking control of the Modanlo estate, the Trustee took steps necessary to put NYSI into a chapter 11 case, and from there, took action to place FACS into a chapter 11 case. The FACS estate was clearly the prize. As discussed *infra* in more detail, FACS had been awarded a $129 million jury verdict against judgment-debtor, General Dynamics Corporation. (As is also discussed *infra*, this $129 million judgment has since been completely eliminated through the reconsideration and appeals process.)[6] The parties have been very litigious in these cases; the Trustee has been involved in months of litigation in which, among other things, he fought (and continues to fight) parties who claim his actions were improper and ineffective, and that he wrongfully caused FACS to be in bankruptcy. The Trustee has been diligent in difficult circumstances.

B.  *The Estate Today*

In support of his Motion to Dismiss, Mr. Modanlo argues that at this point, since loss of the judgment granted against General Dynamics, the estates have so few assets that it has become wasteful and counterproductive to continue to administer them. It is true that the estates now have little value comparatively speaking. The Nader Modanlo estate includes a Bank of America balance of $37,404.83 (as of March 31, 2009). *See* Monthly Operating Report for the Nader Modanlo Case [doc. 431]. NYSI owns the FACS stocks, but the NYSI estate does not

---

[6] *Infra* at n.16.

appear to have any value, according to Mr. Mead's last filed Monthly Operating Report for June 29, 2007 [doc. 56].[7] The Trustee has attempted to liquidate the assets of Mr. Modanlo's estate. He has, for instance, presented a motion for sale of claims against the estate [doc. 385]. Overall, however, the Trustee acknowledges that the "case is underwater" and "that there's not much prospect of getting more money other than some money to pay lawyers a few cents on the dollar . . . " Tr. II, at 174.

### V.     Discussion and Conclusions of Law

*A. The Debtor's Motion for Removal of the Trustee does not survive the Motion for Judgment*

The Motion to Dismiss requests removal of the Trustee pursuant to § 324(a) of the Bankruptcy Code. Under that section, the "court, after notice and a hearing, may remove a trustee, . . . *for cause*." (emphasis added).

The Bankruptcy Code does not define the term "cause." Courts must determine what constitutes "cause" on a case-by-case basis. *In re EquiMed*, *Inc.*, 267 B.R. 530, 532 (D.Md. 2001).  As the *Equimed* court recognized, the leading case in this district on cause for removal of a bankruptcy trustee is *In re Baker*, 38 B.R. 705 (D.Md. 1983). In *Baker*, the court described "cause" as "reasons for which the law and sound public policy recognize as sufficient warrant for removal and reasons which relate to and affect the administration of the office and [which] must be restricted to something of a substantial nature directly affecting the rights and interests of the public." *In re Baker*, 38 B.R., at 707 (internal quotations omitted).

---

[7] The Court notes that this docket number refers to the record in the NYSI Case. All other references to the record herein are to the docket in the jointly administered cases.

6

Conflicts of interest may be reason to remove a trustee, *Id.*, but, "[n]ot every conceivable conflict must result in sending [the trustee] away to lick his wounds." *In re BH&P, Inc.*, 949 F.2d 1300, 1313 (3d Cir. 1991). Most decisions concerning the removal of a trustee under § 324(a) involve intentional misconduct or negligence by the trustee.

Mr. Modanlo has argued, and has sought to demonstrate, that the Trustee has engaged in misconduct and negligence. Mr. Modanlo maintains that the Trustee was unwilling to perform the duties of a trustee, was not disinterested, holds interests adverse to the estate, and has breached his fiduciary duties. However, the record and evidence presented by the Debtor demonstrate to the contrary, that the Trustee has performed his duties in difficult circumstances, has not engaged in misconduct or negligence, and has had no conflict of interest.[8] There has been absolutely nothing presented by the Debtor in support of his case that this Court can recognize as "sufficient warrant for removal" of this Trustee. Accordingly, the Court will not remove the Trustee under § 324(a).

B. *The Debtor's Motion to Vacate the Order appointing the Trustee does not survive the Motion for Judgment*

The Motion to Dismiss next requests that this Court vacate its previous Order ("Trustee Order") [doc. 70] appointing the Trustee. Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60(b), entitled Grounds for Relief from a Final

---

[8] The Debtor has argued that the Trustee is beholden to Mr. Ahan, the Debtor's estranged business partner and creditor, by virtue of Mr. Ahan having funded fees in this case and is conflicted as a result of the relationship. But the funding arrangement issues have been litigated already in this Court, as well as on appeal. Upon analysis of this issue in the past, the courts have found no impropriety in the arrangement whereunder Mr. Ahan provided certain funding ot the estate. *See* Order Granting Motion Chapter 11 Trustee for Order Approving Post-Petition Financing [doc. 173]; *Nader Modanlo v. Michael Ahan, et. al(In re Nader Modanlo)*, Case No. 8:06-cv-01181-DKC (D.Md. 2006).

7

Judgment, Order or Proceeding (2007). Mr. Modanlo seeks to have the Order vacated under subsections (5) or (6) of that Rule:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> ***
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Mr. Modanlo argues that because the cases no longer have assets, the Trustee no longer has a purpose. Accordingly, he urges that the Order appointing Mr. Mead should be dissolved.

The Fourth Circuit has established a two-step test for determining whether an order will be vacated under Rule 60(b). *Werner v. Carbo*, 731 F.2d 204, 206-07 (4th Cir. 1984). First, the movant must "make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Second, the movant must satisfy one of the six grounds set in Rule 60(b) for relief from judgment. The Debtor maintains that grounds exist under subsection (5) and (6) of Rule 12(b). The evidence offered here by the Debtor to support his request to vacate the Court's Trustee Order, does not meet the *Werner* test.

The Debtor has not shown, as he must under the *Werner* test, that there is no unfair prejudice to the other side. Nor has the Debtor demonstrated grounds under subsection (5) or (6) of Rule 12(b). Even if the Debtor is correct that the cases themselves have run out of steam and should be dismissed, this is not sufficient basis under the Rule to vacate an order appointing a trustee. The Debtor's strongest argument is that it is "no longer equitable prospectively" to keep the Trustee Order in place. However, while it may no longer be profitable or economical to keep

8

the Trustee in place, the Debtor has not demonstrated that it is no longer "equitable" to keep the Trustee in place. To the contrary, it appears to the Court that it would not be equitable to permit the Debtor simply to divest himself at this point in time of his litigation nemesis, the Trustee, and to proceed unfettered in bankruptcy, enjoying the protections afforded by chapter 11. Accordingly, the Court will not vacate its Order appointing the Trustee.

> C. *The Debtor's Motion to Dismiss the bankruptcy cases under §1112(b) survives the Motion for Judgment and therefore remains pending*

The Debtor's third prayer for relief in his Motion to Dismiss is that the Modanlo Case and the NYSI Case be dismissed under § 1112(b) of the Bankruptcy Code. The Motion for Judgment asks that the § 1112(b) counts be dismissed. Section 1112(b), which governs the dismissal or conversion of chapter 11 cases, was revised in 2005. The Court first must determine which of two versions of § 1112(b) should be applied to the instant cases.

The Nader Modanlo Case was commenced on July 22, 2005. The NYSI Case was commenced on January 10, 2006. The provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[9] apply to cases filed on or after October 16, 2005. The Nader Modanlo Case was filed before the BAPCPA effective date and the NYSI Case was filed after. Accordingly, while recognizing that the two cases are being jointly administered, the Court must ask which version of the Code to apply. This question is not merely academic, because § 1112(b) was materially changed by BAPCPA.

The Court has found no decisional law addressing what is to occur when one case in a pair of jointly administered cases is governed by pre-BAPCPA law, and the second is governed by post-BAPCPA law. The mere fact that cases are jointly-administered does not mandate that

---

[9] Pub. Law 109-8 (2005).

one particular version of the Code shall apply. Joint administration is designed to promote procedural convenience and cost efficiencies which do not affect substantive rights of claimants or the respective debtor estates. *In re Thomas*, 261 B.R. 848, 853 (Bankr.E.D.Va. 2001) (citing *In re McKenzie Energy Corp.,* 228 B.R. 854, 874 (Bankr.S.D.Tex. 1998), *rev'd on other grounds,* 274 B.R. 450 (E.D.Va. 2001). Accordingly, this Court believes that it is appropriate to apply the pre-BAPCPA version of § 1112(b) to the Nader Modanlo Case and the post-BAPCPA version of § 1112(b) to the NYSI Case.

Bankruptcy Code §1112(b) governs discretionary conversion or dismissal of cases. The two versions of the Code that apply here are as follows:

> §1112(b) (pre-BAPCPA) – Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court *may* convert a case under this chapter to a case under chapter 7 of this title or *may* dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including . . . .[10] (emphasis added).
>
> § 1112(b)(1) (post-BAPCPA) – Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, *absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate*, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *if the movant establishes cause*.[11] (emphasis added).

---

[10] 11 U.S.C. § 1112(b) (1994).

[11] 11 U.S.C. § 1112(b)(1) (2005).

The legislative history of BAPCPA gives little explanation for the change in the language.[12] The Court has compared the House of Representatives' Reports that accompany these two versions of § 1112(b). According to the original 1978 House Report the pre-BAPCPA § 1112(b) version gives "wide discretion to the court to make an appropriate disposition of the case."[13] The section of the 2005 House Report that addresses the post-BAPCPA version of § 1112(b) is entitled, "Expanded Grounds for Dismissal or Conversion and Appointment of Trustee." The 2005 Report notes that the changes "mandate that the court convert or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, if the movant establishes cause, absent unusual circumstances." Apparently, Congress intended to circumscribe the Court's discretionary authority in dismissing chapter 11 cases, and to "mandate" the dismissal or conversion of chapter 11 cases more often. The Court's discretion is much curtailed under the post-BAPCPA version of § 1112(b) and, it appears, cases are to be dismissed more often and in a shorter time frame when dismissal motions are filed. (The Court recognizes what has long been a difficulty with debtor-initiated dismissal motions: § 1112(b) seems to expect that such motions are brought by *creditors*, not the debtor, inasmuch as the section contemplates that the movant will allege one or more bad acts by the debtor or failings of the case. It is awkward when the debtor has to allege the failings of its own case.)

Prior to BAPCPA, the Fourth Circuit utilized a two-part test. (This is the test that must be applied to the Nader Modanlo Case, filed before BAPCPA.) The controlling case is *In re Superior Siding & Window, Inc.*, 14 F.3d 240 (4th Cir.1994). "A motion filed under this section

---

[12] *See* Pub. Law 109-8, § 422 (2005); H.R. REP. NO. 109-31, at 94 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 154-55 (noting the language change and giving limited commentary on the change).

[13] H.R. REP. NO. 95-595, at 405 (1977).

11

invokes a two-step analysis, first to determine whether 'cause' exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in 'the best interest of creditors and the estate.'" *Id.* at 242. In the Nader Modanlo Case, as will be discussed more fully, *infra*, the Movant has made a sufficient showing of cause under this test at this juncture, to survive a motion for judgment.

The Fourth Circuit has not addressed the post-BAPCPA version of § 1112(b) (which applies to NYSI). Other courts have attempted to do so.[14] The statutory language is not a model of clarity. The statute uses the phrase "absent unusual circumstances" in two different subsections of § 1112(b). The term is used in § 1112(b)(1) (quoted *supra*), and then again in § 1112(b)(2):

> (b)(2) The relief provided in paragraph (1) shall not be granted *absent unusual circumstances* specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121 (e) and 1129 (e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
> (i) for which there exists a reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed by the court. (emphasis added).

The mechanics of determining whether a court should convert or dismiss a case under the post-BAPCPA version of 11 U.S.C. § 1112(b) appear to be as follows: First, the movant must

---

[14] One court established a burden-shifting scheme between the movant and opposing party under the post-BAPCPA version of § 1112(b). *In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr.M.D.Pa.2007). The court determined that, "the initial burden lies with the Movants to establish 'cause' for conversion. . . . If the Movants establish 'cause', then the burden shifts to the Debtor to prove it falls within the § 1112(b)(2) 'unusual circumstances' exception to § 1112(b)(1)'s mandatory conversion." *In re Gateway Solutions, Inc.*, 374 B.R., at 561.

12

demonstrate that cause exists by a preponderance of the evidence. At this point, if cause has been demonstrated, the court must ascertain whether unusual circumstances exist to prevent conversion or dismissal. If no such unusual circumstances exist, the court *must* convert or dismiss. The non-moving party is able to try to defeat a motion to convert or dismiss the bankruptcy case by showing that unusual circumstances exist to prevent dismissal or that factors specifically set out in § 1112(b)(2)(A) and (B) exist (e.g., reasonable likelihood of timely confirmation, reasonable excuse for an omission by the debtor). If these exist, the opponent to the motion to convert or dismiss prevails, unless the court determines that the best interests of the estate are otherwise.[15] And, the court must make this best interests assessment even if the opponent does not carry its burden or even make a defense. Thus, if cause has been demonstrated (and whether or not the motion is opposed), the court must ascertain whether the best interests of creditors and the estate are served by granting or denying the motion. *In re Hook*, 397 B.R. 544, 2008 WL 3906794, at *4 (B.A.P. 10th Cir.(Colo.) Aug. 26, 2008) ("[Section 1112(b)(1)] allows the court to deny the motion if doing so would be in furtherance of the best interests of the creditors or the estate.")(unpublished); *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148-49 (Bankr. D.N.M.,2008) ("In this case, because a plan has been filed which purports to pay all creditors in full as of the effective date . . . neither conversion nor dismissal is in the best interest of the creditors of the estate.").

---

[15] As set out in the legislative history § 1112(b)(2):
 . . . the provision specifies an exception to the provision's mandatory requirement *if*: (1) the debtor or a party in interest objects and establishes that there is a reasonable likelihood that a plan will be confirmed within the time periods set forth in sections 1121(e) and 1129(e), or if these provisions are inapplicable, within a reasonable period of time; (2) the grounds for granting such relief include an act or omission of the debtor for which there exists a reasonable justification for such act or omission; and (3) such act or omission will be cured within a reasonable period of time.
H.R. REP. NO. 95-595, at 405 (1977) (emphasis added).

As noted *supra*, the term "unusual circumstances" is, confusingly, used twice in §1112(b). When the term is first used in § 1112(b)(1), it acts as an exception to mandatory dismissal or conversion of the case. The circumstances must both be unusual and establish that the otherwise mandatory relief is not in the best interests of the estate. The second time the term is used, in §1112(b)(2), it acts as another exception. Under § 1112(b)(2), the court may also consider "unusual circumstances" that would prevent conversion or dismissal. These "unusual circumstances" are wide in scope, but are "conditions that are not common in most chapter 11 cases." *In re Orbit*, 395 B.R., at 148 (internal citations and quotation omitted).

Here, in the context of a request for judgment on partial findings, the court assesses the evidence presented by the movant in its case, and may render judgment against the movant if it believes that the evidence is insufficient to support the movant's claim.[16] As the Court has noted, under either version of § 1112(b), the movant (the party seeking dismissal of the case) must first show "cause" for dismissal. In the instant Motion to Dismiss, the Debtor cites as "cause" the following four subparts of § 1112(b)(4):

> For purposes of this subsection, the term "cause" includes—
>   (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; . . .
>   (E) failure to comply with an order of the court;
>   (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . .
>   (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; . . . .[17]

---

[16] *Supra*, at II.

[17] 11 U.S.C. §1112(b)(4)(A), (E), (F), and (J) (2005).

14

The evidence presented at this stage in the trial is not insufficient to support the claim that there is a continuing loss to or diminution in the estate and there is an absence of a reasonable likelihood of rehabilitation. As Nariman Modanlo contended, the assets of the estates have diminished in value and slipped away to the point where "there is no there there." Tr. I, at 41. Everyone in the cases acknowledges that the principal value existed at the time the cases initially were commenced – when FACS held a $129 million judgment against General Dynamics Corporation.[18] Over the course of time that these bankruptcy cases have been pending, the General Dynamics judgment has evaporated, and FACS actually now owes money to General Dynamics.[19] The Trustee has acknowledged that the case is "underwater" and that there is difficulty in realizing meaningful funding for the case. Tr. II, at 174.

The Movant has demonstrated that there exists at least substantial and continuing loss and the absence of reasonable rehabilitation prospects. Accordingly, at this juncture, it appears that "cause," as necessary under the pre-BAPCPA law, has been demonstrated in the Nader Modanlo Case, under the test articulated in *In re Superior Siding & Window, Inc.*, 14 F.3d 240 (4th Cir.1994). Based on Movant's case, and recognizing that the opponents have not yet presented their case, it appears that the relief requested in the Motion may be appropriate and in the best interests of the estates. Accordingly, the Motion for Judgment will be denied as to the Nader Modanlo Case, and the Motion to Dismiss under § 1112(b) shall proceed.

---

[18] FACS received a jury verdict of $129 million in its favor against General Dynamics Corporation in a civil action involving breach of contract, fraud and other related causes of action in 2005. *Final Analysis Communication Services, Inc. v. General Dynamics Corp. et al.*, Case No. 8:03-cv-00307-PJM. This was later reduced to $12 million plus interest in the spring of 2006.

[19] *Final Analysis Communications Services, Inc. v. General Dynamics Corp.*, 2007 WL 3230733 (4th Cir. Nov. 1, 2007) (upholding General Dynamics' counterclaim and overturning FACS' judgment) (unpublished).

In the NYSI Case the Court must consider the scenario under post-BAPCPA §1112(b)(2). At this juncture in the hearing, the Court determines that cause exists (i.e., at least continuing diminution), and again recognizing that it so far has heard only from the Movant, finds no unusual circumstances in Movant's case that would override granting the dismissal relief requested in the Motion to Dismiss. The Motion to Dismiss cannot be disposed of on the Motion for Judgment, and the hearing on the Motion to Dismiss shall continue to allow the Court to hear the opposition to dismissal including whether unusual circumstances exist with the meaning of the new statute.

The *raison d'être* for the filing of these bankruptcy cases was for the protection of the valuable FACS judgment against General Dynamics. The loss and diminution of this asset occurred through no fault of Mr. Modanlo or the Trustee. The Fourth Circuit overturned the judgment against General Dynamics and left standing its counterclaim against FACS. As a result, the value existing in the NYSI estate that brought Mr. Mead to file the NYSI bankruptcy case has dissipated to less than zero. A question to consider then is whether, in light of where we are now, it is in the best interests of the estate or its creditors to carry on this case, with administrative expenses accruing and payable to the Trustee and others.

The parties opposing dismissal will encounter some obstacles. Diminution in the value of the estates continues to occur as expenses continue to mount. And it appears difficult to identify who may be deriving any benefit from these legal struggles and expenses. The Court is not prepared to conclude at this point in the case whether or not dismissal is appropriate and in the best interests of creditors or the estate. The non-movants must put on their case.

In sum, the Motion to Dismiss is denied on Motion for Judgment to the extent it seeks removal of the Trustee and vacation of the Order appointing him. However, sufficient evidence has been presented at this point to deny the Motion for Judgment on the Motion to Dismiss under 11 U.S.C. § 1112(b). The Motion to Dismiss shall remain pending under 11 U.S.C. §1112(b). The Court will proceed with the Motion to Dismiss the cases under 11 U.S.C. § 1112(b), and opposition to it on a date and time set by Order.

A separate Order has issued.

cc:  Richard M. Goldberg, Esq.  
Shapiro Sher Guinot & Sandler  
36 South Charles Street, 20th Floor  
Baltimore, Maryland 21201  

Lynn A. Kohen, Esq.  
Office of the United States Trustee  
6305 Ivy Lane, Suite 600  
Greenbelt, MD 20770  

Steven E. Leach, Esq.  
Leach Travell, PC  
1921 Gallows Road, Suite 1925  
Vienna, VA 22182  

Creighton R. Magid, Esq.  
Dorsey & Whitney LLP  
1001 Pennsylvania Ave., NW  
Suite 400 South  
Washington, DC 20004  

James A. Vidmar, Jr., Esq.  
Logan, Yumkas, Vidmar & Sweeney  
2530 Riva Road, Suite 400  
Annapolis, MD 21401  

Christopher B. Mead, Esq.  
London & Mead  
1225 19th Street, N.W., Suite 320  
Washington, D.C. 20036  

Mr. Nader Modanlo  
5 Crestview Court  
Potomac, MD 20854  

Michael D. Nord, Esq.  
Gebhardt & Smith  
World Trade Center, 9th Floor  
Baltimore, MD 21202  

Joseph B. Suntum, Esq.  
Miller Miller & Canby  
200-B Monroe Street  
Rockville, MD 20850  

**End of Memorandum**

###